UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

WINDY LUCIUS

    Plaintiff,

v.

ACTOR'S PLAYHOUSE PRODUCTIONS, INC,
d/b/a Actors' Playhouse at the Miracle Theatre

    Defendant.
_____/

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff, Windy Lucius ("Plaintiff") hereby sues Defendant, Actors' Playhouse Productions, Inc, ("Defendant") doing business as Actors' Playhouse at the Miracle Theatre, for Injunctive Relief, attorney's fees, litigation expenses and costs pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12181-12189 ("ADA"), 28 C.F.R. Part 36, *et seq*.

    1.    Venue lies in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.1, in that the original transaction or occurrence giving rise to this cause of action occurred in this District.

    2.    Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. *See* also 28 U.S.C. § 2201 and § 2202.

    3.    Plaintiff is a Florida resident, lives in Miami-Dade County, is *sui juris*, and

qualifies as an individual with disabilities as defined by the ADA, and the ADA Amendments Act of 2008, ("AADG") 42 U.S.C. §12101, and the 28 C.F.R. §36.105(b)(2).

4. Plaintiff is legally blind, and substantially limited in performing one or more major life activities, including, but not limited to, seeing, accurately visualizing her world, and adequately traversing obstacles. As such, is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, et seq., and 42 U.S.C. §3602(h).

5. Plaintiff uses the internet to help her navigate a world of goods, products and services like the sighted. The internet and websites provide her with a window into the world that she would not otherwise have. She brings this action against Defendant for offering and maintaining a website that is not fully accessible and independently usable by visually impaired consumers. Plaintiff utilizes the JAWS Screen Reader software, which is one of the most popular reader Screen Reader Software ("SRS") utilized worldwide to read computer materials and comprehend the website information which is specifically designed for persons who are blind or have low vision. Due to her disability, Plaintiff is unable to read computer materials and/or access the internet and websites for information without the assistance of appropriate and available auxiliary aids, and screen reader software specially designed for the visually impaired.

6. The Screen reader software translates the visual internet into an auditory equivalent. at a rapid pace, the software reads the content of a webpage to the user. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring her to another webpage, through visual cues, such as a change in

the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.' Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard." *Andrews v. Blick Art Materials, LLC*, 17-CV-767, 2017 WL 6542466, at *6-7 (E.D.N.Y. Dec. 21, 2017).

7.     Plaintiff is also an advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of asserting her civil rights. As such, she monitors websites to ensure and determine whether places of public accommodation and/or their websites are in compliance with the ADA.

8.     Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104. The place of public accommodation that the Defendant owns, operates, or leases is located in Miami-Dade County.

9.     Defendant, Actors' Playhouse Productions, Inc, is a Florida not-for-profit Corporation, authorized and doing business in the State of Florida, which owns and/or operates a private nonprofit professional theatre organization, branded "Actors' Playhouse", a place of public accommodation, including the Actors' Playhouse at the Miracle Theatre, located at 280 Miracle Mile, Coral Gables, FL 33134, and open to the public. As such, it is a Place of Public Accommodation subject to the requirements of Title III of the ADA and it's implementing

regulation as defined by 42 U.S.C. §12181(7)(C), §12182, and 28 C.F.R. §36.104(2). Defendant's is also referenced as "place of public accommodation," "Actors' Playhouse" or "Theatre"

10. As Defendant is a private business or organization, that owns, and/or operates a place of public accommodation that provides goods, services, facilities, privileges, advantages, to the general public, Defendant, and each of Defendant's locations are defined as a place of "public accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates "[C] a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment," 42 U.S.C. §12181(7)(C) and 28 C.F.R. §36.104(3).

11. Subsequent to the effective date of the ADA, Defendant constructed, or caused to be constructed, a website www.actorsplayhouse.org (hereinafter "website"). Defendant is the owner, operator, lessor and/or lessee of the website. This website supports, is an extension of, is in conjunction with, is complementary and supplemental to the above-referenced public accommodation. This website provides information about Defendant's public accommodation, including information about the special sales, goods, services, accommodations, privileges, benefits and facilities available to patrons at physical locations. On information and belief, Defendant also continually and/or periodically updates and maintains the website.

12. The website is offered as a way for the public to become familiar with Actors' Playhouse's hours of operation, specials, showtimes, seating chart, and other information Defendant seeks to communicate to the public. The website provides information about Actors' Playhouse's promotions, subscriptions and pricing as well as a link to purchase a subscription ticket and become a subscriber. The website also allows the public to learn about "Actors' Playhouse" private events and birthdays, as well as the ability to contact the theater,

to inquire and book special/private events. The website links to "Actors' Playhouse" Facebook, YouTube, and Instagram pages in order to learn about pop-ups and specials. By the provision of hours of operation, showtimes, seating chart, and the ability to inquire about special/private events, and contact the theater, the website is an integral part of the goods and services offered by Defendant. By this nexus, the website is characterized as a Place of Public Accommodation subject to Title III of the ADA, 42 U.S.C. § 12181(7)(C) and 28 C.F.R. § 36.104(3).

13. The website is an extension of Defendant's place of public accommodation. By and through this website, Defendant extends its public accommodation into individual persons' homes, portable devices and personal computers wherever located. The website is a service, facility, privilege, advantage, benefit and accommodation of Defendant's place of accommodation. The website also provides access to the goods, services, facilities, privileges, advantages or accommodations of the place of public accommodation. As a result, Defendant's website must interact with the public, which includes Plaintiff (a visually impaired person). Therefore, Defendant's website must comply with the ADA, which means it must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the goods and services afforded to the general public.

14. Like the seeing community, Plaintiff would like the opportunity to be able to test whether she can use Defendant's website to comprehend the hours of operations, upcoming plays, and test for the ability to contact the "Actors' Playhouse" theater. However, unless Defendant is required to eliminate the access barriers at issue and required to change its policies so that access barriers do not reoccur, Plaintiff will continue to be denied full and equal access to the website as described.

15. Plaintiff is continuously aware of the violations on Defendant's website and is

aware that it would be a futile gesture to attempt to utilize the website as long as those violations exist unless she is willing to suffer additional discrimination.

16. Plaintiff has suffered, and continues to suffer, frustration and humiliation as the result of the discriminatory conditions present at Defendant's website. By benefiting from and/or maintaining a website with barriers to effective communication, Defendant has deprived Plaintiff the equality of opportunity which it offers to the general public.

17. Defendant and alike places of public of accommodation are fully aware of the need to provide full access to all visitors to its website as such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired and result in punishment and isolation of blind and low vision individuals from the rest of society

18. Plaintiff and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

19. Notice to Defendant is not required as a result of Defendant's failure to cure the violations. Enforcement of the rights of Plaintiff is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

20. As a result of the foregoing, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have her reasonable attorneys' fees, costs and litigation expenses paid by Defendant pursuant to 42 U.S.C. § 12205.

### COUNT I – VIOLATIONS OF TITLE III OF THE ADA

21. The ADA requires that Public Accommodations (and Places of Public Accommodation) are required to ensure that communication is effective, which includes the

provision of auxiliary aids and services for such purposes.

22. According to 28 C.F.R. Section 36.303(b)(1), auxiliary aids and services includes "voice, text, and video-based telecommunications products and systems." 28 C.F.R. Section 36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

23. 28 C.F.R. Section 36.303(c)(1)(ii) specifically states that public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability."

24. Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

25. The website has been designed to integrate with the "Actors' Playhouse"physical location through the provision of seating chart selection, and the ability to contact the theater online. Defendant has extended "Actors' Playhouse" theater into individual persons' homes, portable devices and personal computers wherever located, through the website which is a service, facility, privilege, advantage, benefit and accommodation of its place of public accommodation.

26. Plaintiff attempted to access and/or utilize Defendant's website, but was unable to, and she continues to be unable to enjoy full and equal access to the website and/or understand the content therein because numerous portions of the website do not interface with

and are not readable by SRS. More specifically, features of the website that are inaccessible to the visually impaired include, but are not limited to, the following (citing the WCAG 2.1 Level A and AA Guidelines):

i. Guideline 1.1.1 – Non-Text Content. The content on the 'Young Talent Big Dreams Competition 2023' page is only available as an image. The content in the image is not announced, the image is not labeled, and an accessible version is not available on the page. Only the 'Past competitions link' at the bottom of this page is announced.

ii. Guideline 1.3.1 – Info and Relationships. Screen reader users cannot complete the event booking process. Step 2 requires a user to select a seat, but the contents of the seating chart are not announced in a meaningful manner. As show in the screen capture, multiple seats are announced as only "graphic A" or "graphic 1" so there's no way for a user to determine where the seats are located.

iii. Guideline 1.3.2 – Meaningful Sequence is violated. The seating charts do not receive focus and are not announced using arrow or tab key navigation.

iv. Guideline 1.4.1 – Use of Color is violated. Each of the 'Buy' buttons on the Events page are color coded to show the following types of availability: Good, Limited, Sold Out, Not on-sale.' All of the Buy buttons are announced the same regardless of color and the color of the button or availability is not announced.

v. Guideline 1.4.5 – Images of Text is violated. The homepage images contain text that is not announced. For example, the first image at the top of the homepage shows the name of a play along with the dates that it will be playing, but the content in the image is not announced nor is it navigable. It's announced as only "childrens-theatre."

27. Plaintiff continues to attempt to utilize the website and/or plans to continue to attempt to utilize the website in the near future, and in the alternative, Plaintiff intends to monitor the website, as a tester, to ascertain whether it has been updated to interact properly with screen reader software.

28. The fact that Plaintiff could not communicate with or within the Website left her feeling excluded, frustrated, and humiliated, and gave her a sense of isolation and segregation, as she is unable to participate in the same browsing experience, with the same access to the merchandise, sales, services, discounts, and promotions, as provided at the

Website and in the physical location as the non-visually disabled public.

29. As the owner and/or operator and/or beneficiary of the subject website which serves as a gateway to Defendant's public accommodation. Defendant is required to comply with the ADA and the provisions cited above. This includes Defendant's obligation to create, maintain and operate a website that is accessible to Plaintiff so that she (as a visually impaired person) can enjoy full and equal access to the website and the content therein.

30. As more specifically set forth above, Defendant has violated the above cited provisions of the ADA by failing to interface its website with software utilized by visually impaired individuals. Thus, Defendant has violated the following provisions either directly or through contractual, licensing or other arrangements. Defendant's violations have resulted in Defendant denying Plaintiff effective communication on the basis of her disability in accordance with 28 C.F.R. Section 36.303 *et seq*.

  a. by depriving Plaintiff of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of its place of public accommodation (42 U.S.C. § 12182(a));

  b. in the denial of providing Plaintiff the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i));

  c. in failing to afford Plaintiff the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii));

  d. by providing Plaintiff a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals (unless

such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others) (42 U.S.C. § 12182(b)(1)(A)(iii));

   e. by failing to afford Plaintiff goods, services, facilities, privileges, advantages, and accommodations in the most integrated setting appropriate to the needs of the disabled individual (42 U.S.C. § 12182(b)(1)(B));

   f. notwithstanding the existence of separate or different programs or activities provided in accordance with this section, by denying Plaintiff the opportunity to participate in such programs or activities that are not separate or different. (42 U.S.C. § 12182(b)(1)(C));

   g. by a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities (unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations) (42 U.S.C. § 12182(b)(2)(ii)); and,

   h. by a failure to take such steps as necessary to ensure that disabled individuals are not excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services (unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden) (42 U.S.C. § 12182(b)(2)(iii)).

   31. Plaintiff is continuously aware of the violations at Defendant's website and is

aware that it would be a futile gesture to attempt to utilize the website as long as those violations exist unless she is willing to suffer additional discrimination.

32. As the result of the barriers to communication which are present within the website and by continuing to operate and/or benefit from the website with such barriers, Defendant has contributed to Plaintiff's frustration, humiliation, sense of isolation and segregation and has deprived Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges and/or accommodations available to the general public. By encountering the discriminatory conditions at Defendant's website and knowing that it would be a futile gesture to attempt to utilize the website unless she is willing to endure additional discrimination, Plaintiff is deprived of the meaningful choice of freely visiting and utilizing the same accommodations readily available to the general public and is deterred and discouraged from doing so. By maintaining a website with violations, Defendant deprives plaintiff the equality of opportunity offered to the general public.

33. Plaintiff has suffered (and will continue to suffer) direct and indirect injury as a result of Defendant's violations until Defendant is compelled to comply with the requirements of the ADA and conform the website to WCAG 2.1 Level A and AA Guidelines.

34. Plaintiff has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this website as described above. Plaintiff has reasonable grounds to believe that she will continue to be subjected to discrimination in violation of the ADA by the Defendant. Plaintiff desires to access the website to avail herself of the benefits, advantages, goods and services therein, and/or to assure herself that this website is in compliance with the ADA so that she and others similarly situated will have full and equal enjoyment of the website without fear of discrimination.

35. Plaintiff is without adequate remedy at law and is suffering irreparable harm.

36. Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendant to alter its website to make it readily accessible to and usable by Plaintiff and other persons with vision impairment.

37. Plaintiff and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

38. Plaintiff is without adequate remedy at law and is suffering irreparable harm. Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

39. Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendant to alter its website to make it readily accessible to and usable by Plaintiff and other persons with vision impairment.

**WHEREFORE,** Plaintiff, Windy Lucius hereby demands judgment against Defendant, Actors' Playhouse Productions, Inc, d/b/a Actors' Playhouse at the Miracle Theatre, and requests the following injunctive and declaratory relief:

a. The Court issue a Declaratory Judgment that determines that the Defendant's website at the commencement of the subject lawsuit is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.;

b. The Court issue a Declaratory Judgment that determines that the Defendant's website is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.;

c. The Court issue a Declaratory Judgment that Defendant has violated the ADA by

failing to monitor and maintain its website to ensure that it is readily accessible to and usable by persons with vision impairment;

d. That this Court issue an Order directing Defendant to alter its website to make it accessible to, and useable by, individuals with disabilities to the full extent required by Title III of the ADA;

e. That this Court enter an Order directing Defendant to evaluate and neutralize its policies and procedures towards persons with disabilities for such reasonable time so as to allow Defendant to undertake and complete corrective procedures;

f. That this Court enter an Order directing Defendant to continually update and maintain its website to ensure that it remains fully accessible to and usable by visually impaired individuals;

g. An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205; and,

h. Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Respectfully submitted this January 5, 2024.

By: */s/ J. Courtney Cunningham*
J. Courtney Cunningham, Esq.
FBN: 628166
J. Courtney Cunningham, PLLC
8950 SW 74th Court, Suite 220,
Miami, Florida 33156
T:  305-351-2014
cc@cunninghampllc.com
legal@cunninghampllc.com

*Counsel for Plaintiff*